UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS V. JACKSON, <br> Plaintiff, <br> v. <br> VILLASENOR, et al., <br> Defendants. | Case No. 20-cv-08695-EMC <br><br> **ORDER OF SERVICE** <br> Docket No. 13 |

## I. INTRODUCTION

Douglas V. Jackson filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about events and omissions at the Correctional Training Facility in Soledad. His second amended complaint is now before the Court for review under 28 U.S.C. § 1915. This order directs service on the Defendants.

## II. BACKGROUND

Mr. Jackson's second amended complaint alleges the following about events and omissions that occurred at the Correctional Training Facility in Soledad:

On May 5, 2018, correctional officer (C/O) Villasenor asked Mr. Jackson where he was from and did not like Mr. Jackson's answer that identified Jackson's housing unit. Docket No. 13 at 6. Mr. Jackson apparently had misunderstood the question to be an inquiry about his housing unit whereas C/O Villasenor wanted to learn where Mr. Jackson had lived "on the streets" rather than where he lived within the prison and thus was dissatisfied with Mr. Jackson's response identifying his housing unit. *See id.* at 6. C/O Villasenor then wrote Mr. Jackson's name and number "in his little book." *Id.* at 6.

Three days later, on May 8, 2018, C/O Villasenor stopped Mr. Jackson as he was walking to a medical appointment and said, "I told you that I would be seeing you again" and "now we'll see if you still don't like the police." *Id.* at 7. C/O Villasenor then told C/O Clark "to 'fuck' plaintiff's cell up since he wanted to be a 'smart ass.' C/O Clark searched plaintiff's cell but there was no cell search slip written because . . . C/O Clark did not find anything in plaintiff's cell." *Id.*

C/Os Villasenor and Luna then "fabricated/falsified" a CDCR-115 rule violation report against Mr. Jackson. *Id.* They were acting "in co-hoots in retaliation against plaintiff because C/O Villasenor was dissatisfied with an answer that plaintiff gave him" several days earlier. *Id.* at 8 (error in source). C/Os Villasenor and Luna falsely stated in one CDCR-115 that they both entered Mr. Jackson's cell and stated that they confiscated marijuana, a controlled substance. *See id.* at 3.

C/O Villasenor and C/O Luna stated in a second CDCR-115 that they confiscated a cell phone. *Id.* at 6. According to Mr. Jackson, the CDCR has yet to dismiss this CDCR-115. *Id.* at 3-4. (He does not allege that he ever was adjudicated guilty of the charge.)

The hearing on the CDCR-115 for distribution of controlled substance was postponed pending resolution of criminal charges related to the matter. *Id.* at 3. In January 2020, the criminal charges were dismissed in furtherance of justice. *See* Docket No. 13-3 at 13. Also in January 2020, the senior hearing officer on the CDCR-115 "determined" that the reports of C/O Villasenor and C/O Luna were "falsified" and found Mr. Jackson not guilty. *Id.* at 4, 27.

Numerous adverse consequences flowed from Mr. Jackson receiving the CDCR-115. He was put on C-status for 60 days, which meant he had lost privileges regarding canteen, phone, yard, dayroom, and packages. *Id.* at 4. During C-status, he also was deprived of electronic devices, including a TV, radio, and fan for his hot cell. *Id.* Also, because criminal charges were pending with him, he had to go to court each month, a process that involved searches and being transported in shackles. *Id.* Although no credit-loss was assessed for the CDCR-115 regarding the marijuana, he did not receive certain credits due to being put on close custody status while the criminal charges were pending. *See id.* at 5. According to Mr. Jackson, he was disciplined before he was found not-guilty on the marijuana offense.

**III. DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A. Retaliation

A prisoner's First Amendment retaliation claim has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2008) (footnotes omitted).

Giving the *pro se* second amended complaint the liberal construction to which it is entitled, it appears to state a cognizable claim against C/O Villasenor and C/O Luna for retaliation. C/O Villasenor allegedly ordered a cell search for retaliatory purposes and C/Os Villasenor and Luna allegedly wrote false CDCR-115s for retaliatory purposes after Mr. Jackson made a statement that was perceived as flippant by C/O Villasenor.

B. Due Process/False Charges

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S.

3

215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

When there is a deprivation of a liberty interest of real substance due to a disciplinary decision, the procedural protections required are: written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). There also must be some evidence to support the disciplinary decision, see *Superintendent v. Hill*, 472 U.S. at 454, and the information that forms the basis for prison disciplinary actions must have some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

False accusations alone generally are not actionable under § 1983 because falsely accusing a person of misconduct does not violate a right secured by the Constitution or laws of the United States. For a false accusation to be potentially actionable under § 1983, the false charge must implicate some constitutional right, such as the Fourteenth Amendment's right to due process, when the false charge results in discipline that is severe enough to amount to a deprivation of a protected liberty interest under *Sandin* – that is, by imposing an atypical and significant hardship or by inevitably affecting the duration of confinement. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship

4

under *Sandin*). Moreover, a § 1983 claim generally is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing. *See id.* at 654. The Ninth Circuit has, however, held that a prisoner's right to due process might be violated by the inclusion of a false disciplinary charge "based on no evidence whatsoever" in the prisoner's file even absent a cognizable liberty interest. *See Burnsworth v. Gunderson*, 179 F.3d 771, 772 (9th Cir. 1999) (affirming district court's order for prison officials to expunge the disciplinary charge from plaintiff's prison record).

An allegation that a false accusation resulted in criminal prosecution also may be actionable under § 1983. There is a "clearly established due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir. 2001). To prevail on a § 1983 claim of deliberate fabrication leading to criminal prosecution, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. *Id.* at 1115. It is not necessary that the plaintiff be "convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty – being criminally charged is enough." *Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018) (citations omitted).

Liberally construed, the second amended complaint states a cognizable claim against C/O Villasenor and C/O Luna for a due process violation under the *Burnsworth* case, as Mr. Jackson indicates that they wrote the report that was put in his file was based on false evidence. Liberally construed, the second amended complaint also states a claim against C/O Villasenor and C/O Luna for a due process violation under the *Caldwell* case, as Mr. Jackson indicates that they wrote the fabricated report that led to Mr. Jackson being criminally charged with a marijuana-related offense. Although Mr. Jackson ultimately was found not-guilty of the CDCR-115 for marijuana distribution and although the criminal charges ultimately dismissed, claims are stated because neither *Burnsworth* nor *Caldwell* require a final disciplinary decision adverse to the inmate or a criminal conviction.

# IV. CONCLUSION

1. The second amended complaint, liberally construed, states cognizable § 1983 claims against C/O Villasenor and C/O Luna for retaliation and due process violations.

2. The following defendants, both of whom apparently work at CTF-Soledad, shall be served:

- C/O Villasenor
- C/O Luna

Service on the listed Defendant shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the clerk is directed to serve on CDCR via email the following documents: the operative second amended complaint (Docket No. 13), the order of dismissal with leave to amend (Docket No. 11), this order, a CDCR Report of E-Service Waiver form, and a summons. The clerk also shall serve a copy of this order on the plaintiff.

3. No later than 40 days after service of this order via email on CDCR, CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the court a waiver of service of process for the defendant(s) who are waiving service.

4. Upon receipt of the CDCR Report of E-Service Waiver, the clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form. The clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons and the operative complaint for service upon each defendant who has not waived service. The clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

5. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a. No later than **August 10, 2021,** Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **September 17, 2021**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c. If Defendants wish to file a reply brief, the reply brief must be filed and served no later than **October 1, 2021**.

6. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies, it is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's

case will be dismissed and there will be no trial.

7. All communications by Plaintiff with the Court must be served on Defendant's counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

9. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

10. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED**.

Dated: June 28, 2021

_____
EDWARD M. CHEN
United States District Judge