UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS V. JACKSON,<br><br>    Plaintiff,<br><br>    v.<br><br>VILLASENOR, et al.,<br><br>    Defendants. | Case No. 20-cv-08695-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITHOUT PREJUDICE TO RENEWAL**<br><br>Docket Nos. 22, 25 |

## I. INTRODUCTION

In this *pro se* prisoner's civil rights action, Douglas Jackson complains about prison officials' alleged retaliatory behavior and due process violations. The Defendants, Correctional Officers Luna and Villasenor, now move for partial summary judgment. Docket No. 22 ("Summary Judgment Motion" or "MSJ"). Mr. Jackson opposes the motion. Docket No. 23 ("Opposition").

For the reasons discussed below, Defendants' motion for partial summary judgment will be denied without prejudice to renewal accompanied by more complete evidence.

## II. BACKGROUND

A.  Mr. Jackson's Interactions with Defendants

Mr. Jackson alleges that, on May 5, 2018, Defendant Villasenor asked Mr. Jackson where he was from and did not like Mr. Jackson's answer. Docket No. 13 ("Second Amended Complaint") at 6. Mr. Jackson apparently had misunderstood the question to be an inquiry about his housing unit, whereas Defendant Villasenor wanted to learn where Mr. Jackson had lived "on the streets" rather than where he lived within the prison. *See id.* at 6. Defendant Villasenor then

wrote Mr. Jackson's name and number "in his little book." *Id.* at 6.

Three days later, on May 8, 2018, Defendant Villasenor stopped Mr. Jackson as he was walking to a medical appointment and said, "I told you that I would be seeing you again" and "now we'll see if you still don't like the police." *Id.* at 7. Defendant Villasenor then told non-defendant Officer Clark "to 'fuck' plaintiff's cell up since he wanted to be a 'smart ass.' C/O Clark searched plaintiff's cell but there was no cell search slip written because . . . C/O Clark did not find anything in plaintiff's cell." *Id.*

Defendants Villasenor and Luna then "fabricated/falsified" a CDCR-115 rule violation report ("RVR") against Mr. Jackson. *Id.* They were acting "in co-hoots in retaliation against plaintiff because C/O Villasenor was dissatisfied with an answer that plaintiff gave him" several days earlier. *Id.* at 8 (error in source). Defendants Villasenor and Luna falsely stated in a first RVR that they had both entered Mr. Jackson's cell and confiscated marijuana. *See id.* at 3. Defendants Villasenor and Luna stated in a second RVR that they confiscated a cell phone. *Id.* at 6.

B.   Disciplinary Hearing

Criminal charges were brought against Mr. Jackson for the marijuana, and later dismissed. *See id.* at 3; Docket No. 13-3 at 13. In January 2020, the senior hearing officer on the RVR "determined" that the reports from Defendants Villasenor and Luna were "falsified" and found Mr. Jackson not guilty. SAC at 4, 27.

Adverse consequences flowed from Mr. Jackson receiving the RVR. He was put on C-status for 60 days, which meant he lost privileges regarding canteen, phone, yard, dayroom, and packages. *Id.* at 4. During C-status, he also was deprived of electronic devices, including a TV, radio, and fan for his hot cell. *Id.* Also, because criminal charges were pending, he had to go to court each month, a process that involved searches and being transported in shackles. *Id.* Although no credit-loss was assessed for the RVR regarding the marijuana, Mr. Jackson did not receive certain credits due to being put on close custody status while the criminal charges were pending. *See id.* at 5. According to Mr. Jackson, he was disciplined before he was found not-guilty on the marijuana offense.

C.  California's Framework for Administrative Appeals

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates with the following administrative remedies, also referred to as the administrative grievance process.[1] CDCR provided its inmates the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety or welfare." 15 Cal. Code Regs. § 3084.1(a).

"Administrative exhaustion within California requires the completion of the third level of administrative review." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017). Inmates must name any "issue, information, or person . . . in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1. California regulations also require the appeal to name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

D.  Mr. Jackson's Administrative Grievances

Mr. Jackson filed two relevant grievances. *See* Docket No. 22-1 ("Monroy Declaration") (describing every grievance filed by Mr. Jackson); *see also id.*, Exs. A-P (listing and attaching all grievances).

1.  First Grievance

Mr. Jackson filed his first relevant grievance on May 31, 2018 ("First Grievance"). *See* Monroy Decl., Ex. B. The First Grievance contended that the RVR filed by Defendants Villasenor and Luna was false, and that non-defendant hearing officer Laflin violated Mr. Jackson's rights by refusing to admit certain evidence. *See id*. The First Grievance neither accused Defendants of retaliating against Mr. Jackson, nor mentioned the interaction between Mr. Jackson and Defendant Villasenor on May 5, 2018. *See id*. The First Grievance was denied without substantive comment

---

[1] The regulations that set out the features of the administrative grievance process for custody grievances for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, 15 Cal. Code Regs. §§ 3084-3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. Because the alleged incidents took place prior to June 1, 2020, the current administrative grievance process does not apply to Mr. Jackson's claims. All the citations in this order to the California regulations are to the regulations in place during the relevant period, rather than to the current regulations.

3

1    at the first level of review on July 6, 2018.  *See* Monroy Decl., Ex. A.

2           Mr. Jackson appealed to the second level of review on July 10, 2018.  *See* Monroy Decl.,
3    Ex. B.  Mr. Jackson's appeal to the second level of review again failed to accuse Defendants of
4    retaliation, and again failed to mention the interaction between Mr. Jackson and Defendant
5    Villasenor on May 5, 2018.  *See id*.  The First Grievance was denied without substantive comment
6    at the second level of review on August 20, 2018.  *See* Monroy Decl., Ex. A.

7           Mr. Jackson appears to have appealed to the third level of review on September 4, 2018.
8    *See* Monroy Decl., Ex. B (completing the section entitled "If you are dissatisfied with the Second
9    Level Response . . . "); *but see* Monroy Decl., Ex. A (not reflecting the results of any such appeal).
10   In that appeal, Mr. Jackson stated that he had new evidence showing that the RVR was falsified,
11   which would warrant dismissal of the RVR.  *See* Monroy Decl., Ex. B.  Mr. Jackson's appeal to
12   the third level of review again failed to accuse Defendants of retaliation, and again failed to
13   mention the interaction between Mr. Jackson and Defendant Villasenor on May 5, 2018.  *See id*.

14          The record does not reveal the results of Mr. Jackson's appeal to the third level of review.
15   *See* Monroy Decl., Exs. A-B.

16          2.      Second Grievance

17          Mr. Jackson filed his second relevant grievance on January 30, 2020 ("Second
18   Grievance").  *See* Monroy Decl., Ex. C.  Like the First Grievance, the Second Grievance
19   contended that the RVR filed by Defendants Villasenor and Luna was false.  *See id*.  The Second
20   Grievance neither accused Defendants of retaliating against Mr. Jackson, nor mentioned the
21   interaction between Mr. Jackson and Defendant Villasenor on May 5, 2018.  *See id*.

22          The Second Grievance bypassed the first level of review.  *See* Monroy Decl., Ex. A.  It was
23   granted in part and denied in part at the second level of review on February 28, 2020.  *See id*.
24   Specifically, the Second Grievance was granted as to Mr. Jackson's request to have all of his
25   issues addressed, but denied as to Mr. Jackson's requests for compensation and that disciplinary
26   action be taken against Defendants Villasenor and Luna.  *See* Monroy Decl., Ex. C.

27          The statement denying the Second Grievance advised Mr. Jackson that he could appeal the
28   Second Grievance to the third level of review.  *See id*.  The record does not reveal whether Mr.

4

1 Jackson ever appealed to the third level of review, what arguments were made in any such appeal,

2 or the result of any such appeal. *See* Monroy Decl., Exs. A, C.

3 E.     Procedural Background

4     Mr. Jackson filed the instant civil rights action on November 26, 2020. *See* Docket No. 1

5 (dating complaint); *see also Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (announcing the prison

6 mailbox rule). Mr. Jackson then moved to amend his complaint, and tendered a first amended

7 complaint. *See* Docket No. 10. The Court dismissed Mr. Jackson's first amended complaint with

8 leave to amend. *See* Docket No. 11.

9     Mr. Jackson filed a Second Amended Complaint. *See* Docket No. 13 ("SAC"). The Court

10 screened the SAC pursuant to 28 U.S.C. § 1915A, found that Mr. Jackson had stated cognizable

11 retaliation and due process claims against Defendants Villasenor and Luna, and ordered these

12 Defendants to respond to those claims. *See* Docket No. 14.

### III.     VENUE AND JURISDICTION

14     Venue is proper in the Northern District of California because some of the events or

15 omissions giving rise to the complaint occurred at a prison in Monterey County, which is located

16 within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question

17 jurisdiction over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

### IV.     LEGAL STANDARD FOR SUMMARY JUDGMENT

19     Summary judgment is proper where the pleadings, discovery and affidavits show that there

20 is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as

21 a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party

22 who fails to make a showing sufficient to establish the existence of an element essential to that

23 party's case, and on which that party will bear the burden of proof at trial . . . since a complete

24 failure of proof concerning an essential element of the nonmoving party's case necessarily renders

25 all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is

26 material if it might affect the outcome of the lawsuit under governing law, and a dispute about

27 such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

28 for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

1    In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

When a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* If material facts are disputed, summary judgment should be denied, and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170-71.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id*. at 631.

## V.     DISCUSSION

Defendants argue that Mr. Jackson failed to properly exhaust his retaliation claim against

1    Defendants Villasenor and Luna. *See generally*, MSJ. However, the Summary Judgment Motion
2    does not provide all the evidence necessary for the Court to make that determination.

3    "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or
4    any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until
5    such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion
6    in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002);
7    *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses
8    judicial discretion to craft exceptions to the requirement). All available remedies must be
9    exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and
10   effective.'" *Porter,* 534 U.S. at 524. Even when the prisoner seeks relief not available in
11   grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v.*
12   *Churner*, 532 U.S. 731, 741 (2001).

13   Defendants provide evidence showing that Mr. Jackson did not grieve his retaliation claim
14   in the First Grievance, or to the first or second levels of review of the Second Grievance,
15   However, the failure to identify the nature of a wrong in the originally filed grievance, or even in
16   the appeal to the second level of review, may sometimes be cured. The Ninth Circuit has held that
17   a procedurally defective grievance may still satisfy the exhaustion requirement if prison officials
18   ignore the defect and decide the grievance on the merits. *See Reyes v. Smith*, 810 F.3d 654, 656,
19   658 (9th Cir. 2016) (adopting this rule in agreement with all "sister" circuits). In that case, the
20   California prisoner whose health care appeal concerning inadequate pain management failed to
21   identify two prison doctors, as required by CDCR's regulation, nevertheless exhausted his claim
22   of deliberate indifference to serious medical needs against the two prison doctor defendants
23   because the appeal was decided on its merits at all levels of review. *See id.* at 656-57. In *Reyes*,
24   the two unidentified prison doctors had a sufficient connection with plaintiff's claim in the appeal
25   concerning inadequate pain management because prison officials plainly knew that the two
26   unidentified prison doctors served on the pain management committee that had determined that
27   plaintiff should not receive narcotic pain medication. *See id.*

28   Here, Defendants did not provide the response to Mr. Jackson's appeal of the First

7

1   Grievance to the third level of review, nor did they state whether Mr. Jackson ever appealed the
2   Second Grievance to the third level of review, what arguments were made in any such appeal, or
3   the result of any such appeal. *See* Monroy Decl., Exs. A-C. It thus is possible that the third-level
4   response to either grievance may have dealt with the alleged retaliation by Defendants Villasenor
5   and Luna, thereby curing Mr. Jackson's failure to grieve the facts underlying his retaliation claim.

6   Because Defendants have not provided sufficient information for the Court to determine
7   whether Mr. Jackson's failure to exhaust was cured, they have failed to carry their burden at
8   summary judgment. The Summary Judgment Motion is thus **DENIED**. However, this denial is
9   without prejudice too Defendants filing a new motion accompanied by the evidence necessary to
10  show that the retaliation claim was unexhausted. Because this new motion will be Defendants'
11  second attempt to be granted summary judgment as to the retaliation claim, the Court also would
12  encourage Defendants to file any legal challenges to the due process claim in the same motion.

### VI. PLAINTIFF'S MOTION FOR DEFAULT

After Defendants filed their Summary Judgment Motion as to the retaliation claim, Mr. Jackson moved for default. Docket No. 25. Mr. Jackson provides no arguments which would justify entry of default, and as shown above Defendants were actively litigating this action at the time Mr. Jackson moved for default. Accordingly, Mr. Jackson's motion is **DENIED**.

### VII. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment and Mr. Jackson's motion for default both are **DENIED.** Docket Nos. 22, 25.

In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.  No later than **September 2, 2022,** Defendants must file and serve their second motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a second motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir.

8

1  2012).

2  b. Plaintiff's opposition to the second summary judgment or other dispositive
3  motion must be filed with the Court and served upon Defendants no later than **September 30,**
4  **2022**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided
5  later in this order as he prepares his opposition to any motion for summary judgment.

6  c. If Defendants wish to file a reply brief, the reply brief must be filed and
7  served no later than **October 14, 2022**.

8  Plaintiff is provided the following notices and warnings about the procedures for motions
9  for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

21 If Defendants file a motion for summary judgment for failure to exhaust administrative remedies,
22 it is seeking to have the case dismissed. As with other defense summary judgment motions, if a
23 motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's
24 case will be dismissed and there will be no trial.

25 ///
26 ///
27 ///
28 ///

9

Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

This order disposes of Docket Nos. 22 and 25.

**IT IS SO ORDERED**.

Dated: July 28, 2022

_____
EDWARD M. CHEN
United States District Judge