UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS V. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>VILLASENOR, et al.,<br><br>Defendants. | Case No. 20-cv-08695-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 33 |

## I.   INTRODUCTION

In this *pro se* prisoner's civil rights action, Douglas Jackson complains about prison officials' alleged retaliatory behavior and due process violations. The Defendants, Correctional Officers Luna and Villasenor, move for summary judgment. Docket No. 33 ("Summary Judgment Motion" or "MSJ"). Mr. Jackson opposes the motion. Docket No. 34 ("Opposition").

For the reasons discussed below, Defendants' motion for summary judgment is granted.

## II.   BACKGROUND

A.   Mr. Jackson's Interactions with Defendants

Mr. Jackson alleges that, on May 5, 2018, Defendant Villasenor asked Mr. Jackson where he was from and did not like Mr. Jackson's answer. Docket No. 13 ("Second Amended Complaint") at 6. Mr. Jackson apparently had misunderstood the question to be an inquiry about his housing unit, whereas Defendant Villasenor wanted to learn where Mr. Jackson had lived "on the streets" rather than where he lived within the prison. *See id.* at 6. Defendant Villasenor then wrote Mr. Jackson's name and number "in his little book." *Id.* at 6.

Three days later, on May 8, 2018, Defendant Villasenor stopped Mr. Jackson as he was

1    walking to a medical appointment and said, "I told you that I would be seeing you again" and

2    "now we'll see if you still don't like the police." *Id.* at 7.  Defendant Villasenor then told non-

3    defendant Officer Clark "to 'fuck' plaintiff's cell up since he wanted to be a 'smart ass.'  C/O

4    Clark searched plaintiff's cell but there was no cell search slip written because . . . C/O Clark did

5    not find anything in plaintiff's cell." *Id.*

6        That same day, a search was conducted of the cells in Mr. Jackson's building. *See* Docket

7    No. 33-4 ("Luna Declaration").  It was a "mass search." *See id*. ¶ 2.; *see also* Docket No. 33-6

8    ("Villasenor Declaration") at ¶ 2 (describing the mass search); Docket No. 33-2 ("Beck

9    Declaration") at ¶ 2 (same).  A lieutenant selected the cells for officers, including Defendants, to

10   search. *See* Luna Decl. ¶ 6; Villasenor Decl. ¶ 6.  Defendants were directed to search cell 211,

11   belonging to Inmate Jones, and cell 311, belonging to Mr. Jackson. *See* Luna Decl. ¶¶ 4-5;

12   Villasenor Decl. ¶¶ 4-5.  Defendants secured both cells by removing the cells' residents, before

13   proceeding to search either cell. *See* Luna Decl. ¶¶ 4-11; Villasenor Decl. ¶¶ 4-10.

14       Before Defendants searched Mr. Jackson's cell, it was searched by non-defendant Officer

15   Beck. *See* Beck Decl. ¶ 4 & Ex. A.  Officer Beck is "a K-9 Officer, with responsibility for

16   training and utilizing dogs for searching for contraband in housing units." *Id*. ¶ 1.  Officer Beck

17   took his detection dog, Scrappy, into Mr. Jackson's cell. *See id*. ¶ 4.  Scrappy alerted to several

18   areas of Mr. Jackson's cell, and upon leaving the cell Officer Beck informed Defendants of the

19   alerts and their locations. *See id*. ¶¶ 4-5.  Defendants then searched Mr. Jackson's cell, "paying

20   particular attention to the areas to which the K-9 had alerted," and discovered marijuana and a cell

21   phone. *Id*. at ¶ 5.  A rapid test was performed on the marijuana and confirmed the nature of the

22   substance. *See* Luna Decl. ¶¶ 13, 17; Villasenor Decl. ¶¶ 12, 15.  Mr. Jackson demanded the

23   substance be re-tested at a crime lab; the later test also confirmed the substance was marijuana.

24   *See* Luna Decl., Ex. E; Villasenor Decl., Exs. E & H.

25       Defendants Villasenor and Luna filed a CDCR-115 rule violation report ("RVR") against

26   Mr. Jackson. *See* Villasenor Decl., ¶ 18 & Ex. F.  Mr. Jackson also was referred for criminal

27   prosecution. *See id*. ¶ 20, Ex. H.

28

B.  Criminal Prosecution and Disciplinary Hearings

Because criminal charges were pending against Mr. Jackson, he had to go to court each month, a process that involved searches and being transported in shackles. *See* SAC at 4 (identifying this as an adverse consequence of the criminal charge).

The criminal charges against Mr. Jackson eventually were dismissed "in furtherance of justice," pursuant to California Penal Code § 1385. *See* SAC, Ex. E (giving this reason for dismissal). Defendants argue the dismissal was because intervening California appellate authority had rendered Mr. Jackson's conduct non-criminal. *See* MSJ at 5; *see also* SAC, Ex. D (motion from Mr. Jackson's defense counsel, making this argument).

A prison disciplinary hearing was heard on the charge that Mr. Jackson possessed a cell phone in contravention of prison rules. *See* Villasenor Decl., Ex. G. Mr. Jackson was found guilty of possessing a contraband cell phone. *See id*. As punishment, Mr. Jackson lost 60 days of privileges regarding canteen, phone, yard, dayroom, and packages, and was deprived of electronic devices. *See* SAC at 4.

After the criminal charges against Mr. Jackson were dropped, a second prison disciplinary hearing was held for his possession of marijuana in contravention of prison rules. *See* Villasenor Decl., Ex. I. The hearing officer dismissed the RVR because "[t]he preponderance of the evidence presented at the hearing does not substantiate the charge . . . ." *See* Docket No. 33-3 ("Gonzales Declaration"), Ex. C at 27. The hearing officer did not conclude that the RVR was false. *See* Gonzales Decl. at ¶ 8. Mr. Jackson was not punished for marijuana possession. *See* SAC at 5.

C.  California's Framework for Administrative Appeals

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates with the following administrative remedies, also referred to as the administrative grievance process.[1] CDCR provided its inmates the right to

---

[1] The regulations that set out the features of the administrative grievance process for custody grievances for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, 15 Cal. Code Regs. §§ 3084-3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. Because the alleged incidents took place prior to June 1, 2020, the current administrative grievance process does not apply to Mr. Jackson's claims. All the citations in this order to the California regulations are to

appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety or welfare." 15 Cal. Code Regs. § 3084.1(a).

"Administrative exhaustion within California requires the completion of the third level of administrative review." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017). Inmates must name any "issue, information, or person . . . in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1. California regulations also require the appeal to name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

D.  Mr. Jackson's Administrative Grievances

Mr. Jackson filed two relevant grievances. *See* Docket No. 33-5 ("Monroy Declaration") (describing every grievance filed by Mr. Jackson); *see also id.*, Exs. A-C (listing and attaching relevant grievances).

1.  First Grievance

Mr. Jackson filed his first relevant grievance on May 31, 2018 ("First Grievance"). *See* Monroy Decl., Ex. A. The First Grievance contended that the RVR filed by Defendants Villasenor and Luna was false, and that non-defendant hearing officer Laflin violated Mr. Jackson's rights by refusing to admit certain evidence. *See id*. The First Grievance neither accused Defendants of retaliating against Mr. Jackson, nor mentioned the interaction between Mr. Jackson and Defendant Villasenor on May 5, 2018. *See id*. The First Grievance was denied without substantive comment at the first level of review on July 6, 2018. *See id*.

Mr. Jackson appealed to the second level of review on July 10, 2018. *See id*. Mr. Jackson's appeal to the second level of review again failed to accuse Defendants of retaliation, and again failed to mention the interaction between Mr. Jackson and Defendant Villasenor on May 5, 2018. *See id*. The First Grievance was denied without substantive comment at the second level of review on August 20, 2018. *See id*.

Mr. Jackson appealed to the third level of review on September 14, 2018. *See id*. Mr.

---

the regulations in place during the relevant period, rather than to the current regulations.

4

1    Jackson's appeal to the third level of review again failed to accuse Defendants of retaliation, and
2    again failed to mention the interaction between Mr. Jackson and Defendant Villasenor on May 5,
3    2018. *See id*. The First Grievance was denied without substantive comment at the third level of
4    review on January 10, 2019. *See id*. The final denial does not mention retaliation.

5        2.    Second Grievance

6    Mr. Jackson filed his second relevant grievance on January 30, 2020 ("Second
7    Grievance"). *See* Monroy Decl., Ex. B. Like the First Grievance, the Second Grievance
8    contended that the RVR filed by Defendants Villasenor and Luna was false. *See id*. The Second
9    Grievance neither accused Defendants of retaliating against Mr. Jackson, nor mentioned the
10   interaction between Mr. Jackson and Defendant Villasenor on May 5, 2018. *See id*.

11   The Second Grievance bypassed the first level of review. *See id*. It was granted in part
12   and denied in part at the second level of review on February 28, 2020. *See id*. Specifically, the
13   Second Grievance was granted as to Mr. Jackson's request to have all his issues addressed but
14   denied as to Mr. Jackson's requests for compensation and that disciplinary action be taken against
15   Defendants Villasenor and Luna. *See id*.

16   Mr. Jackson appealed to the third level of review on March 15, 2020. *See id*. His appeal
17   to the third level does not mention retaliation. *See id*. The third level of review adopted the
18   second level's denial without additional comment, and did not mention retaliation. *See id*.

19   E.    Procedural Background

20   Mr. Jackson filed the instant civil rights action on November 26, 2020. *See* Docket No. 1;
21   *see also Houston v. Lack*, 487 U.S. 266, 270-71 (1988). Mr. Jackson then moved to amend his
22   complaint and tendered a first amended complaint. *See* Docket No. 10. The Court dismissed Mr.
23   Jackson's first amended complaint with leave to amend. *See* Docket No. 11.

24   Mr. Jackson filed a Second Amended Complaint. *See* Docket No. 13 ("SAC"). The Court
25   screened the SAC pursuant to 28 U.S.C. § 1915A, found that Mr. Jackson had stated cognizable
26   retaliation and due process claims against Defendants Villasenor and Luna, and ordered these
27   Defendants to respond to those claims. *See* Docket No. 14.

28   Defendants moved for partial summary judgment, arguing that Mr. Jackson had failed to

1  exhaust his retaliation claim. *See* Docket No. 22. The Court denied that motion, noting that
2  Defendants' evidence was insufficient to carry their arguments, but gave Defendants leave to
3  renew their motion with proper support. *See* Docket No. 29.

4  Defendants' renewed summary judgment motion is now before the Court.

### III. VENUE AND JURISDICTION

Venue is proper in the Northern District of California because some of the events or omissions giving rise to the complaint occurred at a prison in Monterey County, which is located within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

When a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to

6

1  a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d
2  1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative
3  defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d
4  1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the
5  defendant has the initial burden to prove "that there was an available administrative remedy, and
6  that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that
7  burden, the "burden shifts to the prisoner to come forward with evidence showing that there is
8  something in his particular case that made the existing and generally available administrative
9  remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the
10 defendant, however. *Id.* If material facts are disputed, summary judgment should be denied, and
11 the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at
12 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to
13 jurisdiction and venue," *id.* at 1170-71.

The court's function on a summary judgment motion is not to make credibility
determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W.
Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must
be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the
facts must be viewed in the light most favorable to the nonmoving party. *See id*. at 631.

## V.     DISCUSSION

A.    Exhaustion of the Retaliation Claim

Defendants argue that Mr. Jackson failed to properly exhaust his retaliation claim against Defendants Villasenor and Luna. *See generally*, MSJ. The Court agrees.

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exhaustion exceptions). All available remedies must be exhausted, and

7

exhaustion is a prerequisite to suit. *See Porter,* 534 U.S. at 524; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001).

In their first dispositive motion, Defendants provided evidence showing that Mr. Jackson did not grieve his retaliation claim in the First Grievance, or to the first or second levels of review of the Second Grievance. *See* Docket No. 29 at 7 (concluding Mr. Jackson's claims were not exhausted by any of these documents). The Court observed that the third-level response to each grievance had not been provided, and that it could have cured Mr. Jackson's failure to exhaust. *See id.* Although the Ninth Circuit has held that a procedurally defective grievance may still satisfy the exhaustion requirement if prison officials ignore the defect and decide the grievance on the merits. *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016).

In their second dispositive motion, Defendants show that prison officials did not ignore Mr. Jackson's failure to exhaust and decide his retaliation claim on the merits. *See* Monroy Decl., Exs. A, B. Instead, the third-level response to each grievance response only to the defects Mr. Jackson identified with his disciplinary hearing. *See* Monroy Decl., Ex. A at 5-6 & Ex. B at 42. Mr. Jackson did not mention retaliation in either his First or Second Grievance, and no official prison response ever raised the issue of retaliation. *See id.* Thus, Mr. Jackson's failure to exhaust was not cured.

Mr. Jackson argues that, on June 13, 2018, he was interviewed about the First Grievance as part of the grievance investigation, and orally related the "additional information" of his retaliation claim to the interviewing officer. *See* Opp. at 3-4. This does not cure his failure to exhaust.

First, as Defendants note, Mr. Jackson identified the "additional information" he gave to that interviewing officer, and it had nothing to do with retaliation. *See* Monroy Decl., Ex. A at 8, 10. Specifically, the "additional information" was:

> It is not nor has it ever been my contention that any officer found a cellular phone in my property as stated on page 2 of 3 first level appeal decision. It has in fact always been my contention that no locker has ever been identified as mine by Officer A. Villasenor. Officer A. Villasenor stated he found a cell[ul]ar phone in a locker assigned to me which is false, it has never been verified as to a locker assignment.

*Id.* at 10. Nothing about this "additional information" would alert prison officials that Mr. Jackson

8

1   believed he had been retaliated against by Defendants.

2   Second, even if Mr. Jackson had orally related his retaliation claim to the investigating
3   officer, this would not exhaust his claim. The relevant California regulations required that the
4   inmate name any "issue, information, or person . . . in the originally submitted CDCR Form 602."
5   Cal. Code Regs. tit. 15, § 3084.1 (emphasis added). Mr. Jackson thus was required to identify his
6   retaliation claim in his original grievance, not to raise it in a conversation during the investigation
7   of that grievance. *See id.*; *see also Jones v. Bock*, 549 U.S. 199, 217-18 (2007) (a prisoner must
8   comply with prison grievance procedures to "properly exhaust"). Although the Ninth Circuit
9   allows a failure to exhaust to be cured by prison officials' later actions, *see Reyes*, 810 F.3d at 656,
10  658, this inquiry focuses on how *officials* handle the grievance rather than on what the prisoner
11  says or does after his grievance has been submitted. Thus, even if Mr. Jackson had orally related
12  his retaliation claim during the investigation, this would be insufficient to exhaust.

13  Defendants have shown that an administrative remedy was available, and Mr. Jackson
14  failed to exhaust. *See Albino*, 747 F.3d at 1172 (stating this is defendants' burden). This shifted
15  the burden to Mr. Jackson, who was required to provide evidence, not just make conclusory
16  allegations, to show he exhausted. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016)
17  (A prisoner's "unsupported allegations" regarding impediments to exhaustion are insufficient to
18  create a triable issue of fact.). Because Mr. Jackson failed to produce any evidence that he
19  exhausted his retaliation claim, he has failed to rebut Defendants' showing that he did not exhaust.

20  Defendants are entitled to summary judgment on Mr. Jackson's retaliation claim because
21  Mr. Jackson failed to exhaust his retaliation claim, and that failure was not cured.

22  B.   Merits of the Due Process Claim

23  Mr. Jackson alleges that Defendants denied him due process by issuing a
24  "fabricated/falsified" RVR. SAC at 7. He alleged that this RVR led him to be subject to prison
25  disciplinary proceedings, and to criminal charges. *See id.* at 6. The Court found that, liberally
26  construed, this allegation stated a cognizable due process claim. Docket No. 14 at 4-5.

27  Mr. Jackson's claim as to the disciplinary charges fails because he did not suffer a
28  deprivation of "real substance" under Supreme Court and Ninth Circuit precedent. His claim as to

the criminal charges fails because he presents no evidence that the RVR was false.

        1.      <u>Disciplinary Proceedings</u>

The Due Process Clause protects individuals against deprivations of life, liberty, or property without adequate process. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Those who seek to invoke the procedural protections of the Due Process Clause must establish that their life, liberty, or property is at stake. *Id.*

        a.      <u>No Deprivation of Real Substance</u>

To proceed with the instant due process claim, Mr. Jackson must establish that the alleged falsified RVR implicated his life, liberty, or property. A claim of denial of due process in connection with prison disciplinary proceedings does not implicate a protected liberty interest unless the deprivation suffered was one of "real substance," as defined in *Sandin v. Conner*, 515 U.S. 472 (1995). A deprivation of "real substance" occurs when (1) a restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action "will inevitably affect the duration of [a] sentence," *id.* at 487.

Here, Mr. Jackson alleges that because of the RVR for cell phone possession, he lost 60 days of privileges regarding canteen, phone, yard, dayroom, and packages, and was deprived of electronic devices. SAC at 4. No credit-loss was assessed for the RVR. *See id*. at 5.

Mr. Jackson's brief loss of privileges does not state a due process claim. Both the Supreme Court and the Ninth Circuit have found that a brief loss of privileges does not "present a dramatic departure from the basic conditions" of prison life, and thus is not a deprivation of real substance. *Sandin*, 515 U.S. at 485.[2] Mr. Jackson thus has failed to raise a genuine issue of fact

---

[2] *See also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (classification to level-4 prison rather than level-3 prison not atypical and significant hardship creating protected liberty interest); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding there is no constitutional right to canteen items), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (finding "there is no liberty interest in" the loss of recreational programs), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995); *Mahon v. Prunty*, 87 F.3d 1320 (9th Cir. 1996) (finding no liberty interest in family visits, telephone calls, or yard access) (unpublished); *Davis v. Small*, 595 F. App'x 689, 691 (9th Cir. 2014) (finding no liberty interest in telephone or yard privileges); *see also Sandin*, 515 U.S. at 500 (Breyer, J., dissenting) (describing the " '[l]oss of privileges' " such as "community recreation; commissary; ... personal visits ...; personal phone calls ..." as "less significant" and "comparatively unimportant prisoner 'deprivations' "); *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (no due

1  that he was deprived of a liberty interest by the disciplinary proceedings.

                b.        <u>Evidence Supported the Sanction</u>

Even if no liberty interest is implicated, procedural due process rights may be violated when a prison disciplinary sanction is supported by no evidence. *See Burnsworth v. Gunderson*, 179 F.3d 771, 773-74 (9th Cir. 1999). The "no evidence" standard is that of *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). *See Burnsworth*, 179 F.3d at 773. In *Hill*, the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board. 472 U.S. at 455. "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. *Id.* Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Id.* at 455-56. Additionally, the Ninth Circuit has held that there must be "some indicia of reliability" of the information that forms the basis for prison disciplinary actions. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

In this case, no reasonable jury could find that the disciplinary finding was not supported by "some evidence." As to discipline for possession of a cell phone, there was evidence to support the finding in the form of the RVR from Defendants, the testimony from non-defendant Officer Beck, and the physical evidence of the cell phone.[3]

Independent assessments of Defendants' credibility are not required in finding that there was some evidence. *See Hill*, 472 U.S. at 455. Also, the undisputed facts show "some indicia of reliability" to the RVR because: (1) Defendants were present at the scene of the search; (2) Officer Beck was present at the scene of the search and confirmed that marijuana and a cell phone were

---

process claim for deprivation of television, certain property, access to commissary, and restrictions on outdoor exercise for twenty-six months); *Jones v. McDaniel*, 552 F. Supp. 2d 1141, 1146 (D. Nev. 2008) (loss of phone and canteen privileges not atypical and significant hardship).

[3] As to the possession of marijuana, this disciplinary charge was dismissed and Mr. Jackson suffered no consequences for it. The Ninth Circuit has held that a prisoner is not denied due process where a due process error is "corrected in the administrative appeal process," which is "part of the due process afforded prisoners." *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (quoting *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995)). Assuming a due process violations occurred in the RVR, it was cured by the later dismissal of disciplinary charges.

1 found in the cell; and (3) marijuana and a cell phone were recovered. Because no liberty interest

2 was implicated and the discipline was supported by some reliable evidence, there was no violation

3 of Mr. Jackson's right to due process.

4 The Constitution demands due process in disciplinary procedures, not error-free decision-

5 making. *Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994). The process due in such a prison

6 disciplinary proceeding includes written notice of the charges, time to prepare for the hearing, a

7 written statement of decision, allowance of witnesses and documentary evidence when not unduly

8 hazardous to institutional safety or correctional goals, and aid to the accused where the inmate is

9 illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). There is no

10 allegation that any of these protections were absent here. *See generally*, SAC.

11 In sum, Mr. Jackson's due process claim fails as to the cell phone because he did not suffer

12 a deprivation of real substance, there was at least some evidence to support the RVR, and he

13 received the due process protections guaranteed by *Wolff*. Defendants are entitled to summary

14 judgment as to Mr. Jackson's challenge to the disciplinary proceedings.

15  2.  Criminal Charges

16 There is a "clearly established due process right not to be subjected to criminal charges on

17 the basis of false evidence that was deliberately fabricated by the government." *Devereaux v.*

18 *Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

> To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. . . . To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.

25 *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

26 Mr. Jackson's claim fails because he presents no evidence the RVR was fabricated.[4]

---

[4] In addition, the challenged RVR did not lead to any deprivation of liberty. *See Spencer*, 857 F.3d at 798 (requiring a deprivation of liberty). The criminal charges against Mr. Jackson were

12

1    Indeed, Mr. Jackson does not even state under oath that he did not possess marijuana and a cell

2    phone.  *See* SAC; *see also* Docket Nos. 34-1 & 34-2 (declarations filed as exhibits to the

3    opposition, challenging inconsistencies in Defendants' documentation but not making this simply

4    statement).  He thus has not submitted any admissible evidence that the RVR was false.

5       Rather than submitting evidence showing the RVR was false, Mr. Jackson argues that the

6    RVR must have been fabricated because the criminal and disciplinary charges against him were

7    dismissed, and because the timeline in the RVR is confusing.  *See id*.; *see also* Opp. at 4.  The

8    record does not support Mr. Jackson's desired inference.

9       Although the criminal charges against Mr. Jackson were dismissed, the record does *not*

10   include a finding that they were based on a false report.  Rather, the criminal charges were

11   dismissed in "furtherance of justice."  *See* SAC, Ex. E.  This is consistent with Defendants'

12   argument that the Superior Court was following appellate authority which rendered Mr. Jackson's

13   conduct non-criminal.  *See* MSJ at 5.  Similarly, the hearing officer did *not* find that the RVR

14   against Mr. Jackson was fabricated, but rather dismissed the disciplinary charges because "[t]he

15   preponderance of the evidence presented at the hearing does not substantiate the charge . . . ."

16   Gonzales Decl., Ex. C at 27.  The hearing officer also submitted a declaration stating that he did

17   not find that the RVR was fabricated.  *See id*. at ¶ 8.  Thus, the inferences Mr. Jackson asks the

18   Court to draw are contradicted by the record.

19      Mr. Jackson also contends that the RVR must have been fabricated because the timeline

20   would require Defendants to be in two places at once.  *See generally,* Opp.  Not so.  As

21   Defendants explain, they secured cells 211 and 311 by removing the inmates from both cells, and

22   then went back and searched both cells.  *See* Reply at 4 (summarizing Defendants' statements,

23   with citations); *see also* Luna Decl. & Ex. C, Villasenor Decl. & Ex. B (RVR, showing this pattern

24   of activity).  In other words, Mr. Jackson assumes the sequence of events ran secure-search-

25   secure-search, when in fact it ran secure-secure-search-search.  Mr. Jackson's misunderstanding of

---

dismissed on a technicality.  *See* MSJ at 10 (describing dismissal).  The only hardship Mr. Jackson suffered from the criminal charges was going to court, being searched, and being transported in shackles.  *See* SAC at 4.  This is hardly a deprivation of liberty.

United States District Court
Northern District of California

1 the chain of events does not constitute evidence that the RVR was fabricated.

2 By contrast, Defendants presented admissible evidence showing the RVR was not
3 fabricated. First, Defendants swear under oath that they found marijuana and a cell phone in Mr.
4 Jackson's cell upon searching that cell. *See generally*, Luna Decl. & Villasenor Decl. Second,
5 non-defendant Officer Beck provided a declaration supporting the truth of the RVR. *See* Beck
6 Decl. Officer Beck stated that the dog used to search Mr. Jackson's cell is "specifically trained to
7 detect . . . cellular phones, tobacco, and controlled substances." *Id*. ¶ 3. This dog "'alerted' to
8 several areas in the cell," *id*. ¶ 4, and the contraband was later found in the areas in which the dog
9 had alerted, *id*. ¶ 5. Third, in addition to his declaration in this action, Officer Beck filed a
10 contemporaneous incident report which stated that the dog had alerted to specific areas and that
11 Officer Beck had then informed Defendants of the areas to which the dog had alerted. *See id*., Ex.
12 A at 5. That, too, has been included in the record. Fourth, Defendants have provided photographs
13 of the marijuana and cell phone. *See* Luna Decl., Exs. A-B; Villasenor Decl., Ex. A.

14 Mr. Jackson's due process claim fails as to the marijuana because he has provided no
15 evidence that the RVR was fabricated – the theory underlying his due process claim – and
16 Defendants have provided evidence that it was not. Defendants are entitled to judgment as a
17 matter of law. *See* Fed. R. Civ. P. 56(a).

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.** Docket No. 33. Defendants are entitled to judgment in their favor. The Clerk shall close the file.

This order disposes of Docket No. 33.

**IT IS SO ORDERED**.

Dated: September 29, 2023

_____
EDWARD M. CHEN
United States District Judge

14